**ST. FRANCIS HOSPITAL v. HELVER-
ING, Com'r of Internal Revenue.**

No. 7829.

United States Court of Appeals for the
District of Columbia.

Decided Feb. 2, 1942.

Mr. Edward J. I. Gannon, of Pittsburgh, Pa., for petitioner.

Miss Carolyn E. Agger, Sp. Asst. to Atty. Gen., with whom Samuel O. Clark Jr., Asst. Atty. Gen., and Sewall Key and Miss Helen R. Carloss, Sp. Assts. to Atty. Gen., were on the brief, for respondent.

Messrs. J. P. Wenchel, Chief Counsel, and Robert L. Williams, Sp. Atty., both of the Bureau of Internal Revenue, both of Washington, D. C., also entered appearances for respondent.

Before GRONER, Chief Justice, and VINSON and EDGERTON, Associate Justices.

VINSON, Associate Justice.

This case comes from the Board of Tax Appeals and concerns liability for income tax at source on interest payments under a mortgage.[1] The Board entered an order in favor of the Commissioner. Petitioner does not contest the amount of, but only its liability for, the taxes imposed.

We summarize the facts from the parties' stipulation. The petitioning corporation (mortgagor) assumed a mortgage; the Union Trust Company of Pittsburgh, a domestic corporation, is the mortgagee. The mortgage provides that the interest payments are to be made at the office of the Trust Company. The mortgage further provides that there are to be no deductions from interest or principal payments on

---

[1] The Revenue Acts of 1928 and 1932 are involved, §§ 144 and 143 respectively, 26 U.S.C.A.Int.Rev.Acts, pages 399, 535. Compare today's law, 26 U.S.C.A. Int.Rev.Code, § 143.

account of any federal or state taxes (with certain exceptions not relevant here) which the mortgagor, the mortgagee or its assignee may be required to pay under present or future laws. The mortgagor agrees to pay all such taxes insofar as it can do so legally.

After the mortgage had been executed the Union Trust Company made a declaration of trust which recites that the mortgage and its accompanying bond are held in trust for several estates; the Trust Company is "guardian, trustee, agent or other fiduciary" for these estates. The interest of each estate in the mortgage is shown by books of the Company. This is in keeping with a Pennsylvania statute.[2] The declaration of trust was not recorded, nor was any direct notice of its existence given the mortgagor. After each semi-annual instalment of interest has been paid the Trust Company, however, it has distributed the money to the several estates, and has filled out, as required by its status as fiduciary, treasury forms 1000, which have been sent to the mortgagor.[3]

The Commissioner determined that petitioner was liable for taxes in the years 1930-33 inclusive, and the mandatory penalties for failure to file returns were assessed.[4] These four years involve the Revenue Acts of 1928 and 1932, which are the same for the purposes of this litigation.

The Acts provide: "In any case where bonds, mortgages * * * of a corporation contain a contract or provision by which the obligor agrees to pay any portion of the tax imposed by this title upon the obligee * * * or to pay the interest without deduction for any tax which the obligor may be required or permitted to pay thereon, or to retain therefrom under any law of the United States, the obligor shall deduct and withhold a tax equal to 2 per centum of the interest upon such bonds, mortgages * * * whether such interest is payable annually or at shorter or longer periods, if payable to an individual, a part-

nership, or a foreign corporation * * *".[5] The same section further provides that the recipient of the interest shall include that income in his return but that he may credit the amount so "withheld" against the tax computed in his return.[6] In the case of tax-free covenants, then, the net effect is that the obligor pays a 2 per centum income tax for the recipient of the income inasmuch as the obligor by his contract cannot deduct this amount withheld from the interest payments. Thus when this section applies to tax-free covenants it is less misleading to say it requires an income tax at source than to speak in terms of withholding.[7] This section does not apply to payments to a domestic corporation in respect of either the obligor's paying the tax at the source or the obligee's crediting the tax in its return.[8]

Petitioner stresses the argument that the interest money was paid to the Trust Company, a domestic corporation, even after the declaration of trust. In this connection a Pennsylvania statute must be considered. "That said companies may assign to their various trust estates participation in a general trust fund of mortgages upon real estate securing bonds, in which case it shall be a sufficient compliance with the provisions of this section for the company to designate clearly on its records the bonds and mortgages composing such general trust fund, the names of the trust estates participating therein, and the amounts of the respective participations; and in such case no estate so participating shall be deemed to have individual ownership in any bond and mortgage in such fund, and the company shall have the right at any time to repurchase at market value but not less than face value any such bonds and mortgages from such fund, with the right to substitute therefor other bonds and mortgages."[9]

The question for decision is: under the facts presented and the Pennsylvania statute set out, do the tax-free covenant and the relevant section of the Revenue Acts create tax liability on the petitioner?

2 Laws of Pa. (1929) P.L. No. 216, p. 512, set out infra.

3 Arts. 765 and 766 of Regulations 74 (Rev.Act of '28) and of Regulations 77 (Rev.Act of '32). Compare Arts. 364 and 365 of Regulations 45 (Rev.Act of '18). 5 Paul & Mertens, Law of Federal Taxation (1934) § 49.31.

4 Section 291 of the Revenue Acts of 1928 and 1932, 26 U.S.C.A.Int.Rev.Acts, pages 431, 566.

5 Section 144 of the '28 Act; section 143 of the '32 Act.

6 Id. subsection (d) under both sections.

7 5 Paul & Mertens, Law of Federal Income Taxation (1934) §§ 49.01, 49.04.

8 Art. 763 of Regulations 74 and 77. Compare Art. 363 of Regulations 45. 5 Paul & Mertens, Law of Federal Income Taxation (1934) § 49.04.

9 See footnote 2 for citation.

The government states that the Revenue Acts are concerned with the person or company that receives the income in its own right for its own use. The government then argues that the Trust Company did not have an equity in the money, rather it was the collecting agent for the estates. The government, while arguing that the estates are the owners of the mortgage debt, grants that some of the ownership rights are restricted. Lastly the government points out that petitioner received, from the Trust Company, in due time, through the required treasury forms, notice that the estates were receiving the money, and the fact that the notice came after rather than before the interest payments was immaterial because the payments were not subject to deduction, and the amount of tax liability would not be altered.

As already indicated, petitioner argues that the interest was payable to the Trust Company, a domestic corporation, and hence there was no tax liability at the source. While conceding that the mortgage was assignable as a whole, petitioner claims that the Trust Company had no right to split the title into fragments. Moreover, the Trust Company was not a mere collecting agent but a fiduciary and as a fiduciary the interest was payable to it. And further the Pennsylvania statute provides that in a declaration of trust such as this no estate shall be deemed to have individual ownership.

We believe that the decision of the Board should be affirmed.

■ While we would not say that the Trust Company was a mere collecting agent, a conduit that carried the monies, it did not hold the mortgage as a part of its own assets, at least after the declaration of trust. As fiduciary for the estates, the Trust Company was the one to receive the payment from the petitioner, but the economic benefit, in fact the money itself, went to the estates. This factor of economic benefit is important under the Revenue Acts. A state statute should not lightly alter the importance of this factor in administering the federal act.

■ Here, however, there are not necessarily any cross purposes between the state and federal statutes. The action of the Trust Company in making the declaration of trust was in accord with the nature of its business as well as with the state statute. The state statute probably gives the Trust Company greater powers of management than it would have if each estate had unfettered individual ownership. In turn the petitioner was probably protected from the harassment of many assignees inasmuch as the estates would likely have to act through the Trust Company. At the same time the state law, through the flexible plan it encourages, allows the Trust Company, a fiduciary, to give its beneficiaries the income from loans which it is able to execute. We hold that petitioner's payments of interest were not made to the Union Trust Company, a domestic corporation, within the meaning of the tax at source section of the Revenue Acts, and hence petitioner is liable for the taxes it contests in this action.

This result is just. The mortgagor, in order to receive the loan or in order to receive it at the interest rate it did, wrote a tax-free instrument. The instrument or its benefits were assignable by the mortgagee. The ultimate equitable owners of the mortgage were entitled to rely upon its tax-free promise, which expressly ran to their class. The history of this tax at source section shows the protection of those who own tax-free obligations to have been a policy of the Revenue Act.[10]

The instrument and its benefits were first held apparently by a domestic corporation. If interest payments had been made to this holder, the mortgagor would have had to pay no tax under the law.[11] The benefits of the instrument were assigned, however, during the tax periods in question. The fact that the recipients of the mortgage money were not domestic corporations was revealed to the mortgagor by its receipt of treasury forms 1000. Domestic corporations do not file these forms with the obligor. These forms are used in part to reveal whether the recipient had income less than the tax exemptions.[12] If so, the obligor is not liable for the tax at source. Otherwise these forms reveal that the obligor is required to pay tax at source.

---

[10] 5 Paul & Mertens, Law of Federal Income Taxation (1934) § 49.04. This section has been changed, so that the government is no longer an "intermediary", due to the administrative burden. 2 Hearings before the Committee on Ways and Means, 73rd Cong. Revenue Rev. (1934) pp. 137–8, 145–6. See footnote 1.

[11] See footnote 8.

[12] Art. 763 of Regulations 74 and 77. Compare Art. 363 of Regulations 45.

Even if the obligor had known that it was liable for this tax at source there would have been no difference in the amount of interest money paid, for the mortgage instrument prevented deductions for these contested taxes. Likewise, the amount of the tax the obligor had to pay could not be ascertained, in any event, until it received the treasury forms.

The Board's order is affirmed.